UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Camelot LLC,

          Plaintiff,

    v.

AMC ShowPlace Theatres, Inc.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 10-4255 ADM/JJK

_____

Norman Baer, Esq., and Philip Kaplan, Esq., Anthony, Ostlund, Baer & Louwagie, PA, Minneapolis, MN, on behalf of Plaintiff.

Ann Kennedy, Esq., and DeAnne Hilgers, Esq., Lindquist & Vennum, Minneapolis, MN, on behalf of Defendant.
_____

## I.  INTRODUCTION

On January 25, 2011, the undersigned United States District Judge heard oral argument on Plaintiff Camelot LLC's ("Camelot") Motion for Summary Judgment [Docket No. 8].  In its response to Camelot's motion, Defendant AMC ShowPlace Theatres, Inc. ("AMC") requests a grant of summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56(f).

Camelot's Complaint [Docket No. 1] seeks a declaratory judgment interpreting the terms of a commercial lease between itself and AMC.  For the following reasons, Camelot's motion for summary judgment is granted.  The Court denies AMC's request for summary judgment.

## II. BACKGROUND

Camelot owns the "Block E" shopping mall in downtown Minneapolis. The mall features an 84,000-square-foot movie theater operated by AMC. The parties' business relationship is governed by a Lease Agreement ("Lease") executed on October 1, 2007, by their predecessors-in-interest. Jaffe Aff. [Docket No. 11] at ¶¶ 2-5 and Exhibit A.[1]

The Lease provides a five year term, see Lease, §§ 3.1, 1.1D, which is scheduled to conclude on September 30, 2012. What happens afterward is in dispute. Camelot claims the Lease expires, and the parties may renegotiate new terms if they wish. AMC claims it can extend the lease for two successive five-year periods on the same terms and conditions as before. Both sides argue the relevant Lease provision, Section 3.4, is unambiguous, and seek judicial interpretation of Section 3.4 as a matter of law. The Lease provides, and the parties do not dispute, that Minnesota law applies. Lease § 17.8.

## III. DISCUSSION

**A.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c));[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)(same); Celotex Corp. v. Catrett, 477

---

[1] A copy of the Lease is attached as Exhibit A to the Jaffe Affidavit. For convenience, this Order will refer to Exhibit A as the "Lease."

[2] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010; the summary judgment standard was previously located in Rule 56(c).

U.S. 317, 323 (1986)(same). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in its favor. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation omitted). After giving notice and a reasonable time to respond, the Court may grant summary judgment for a nonmovant. Fed. R. Civ. P. 56(f)(1).

A lease is a form of contract. Minneapolis Public Housing Auth. v. Lor, 591 N.W.2d 700, 704 (Minn. 1999). "The construction and effect of a contract presents a question of law, unless an ambiguity exists." Brookfield Trade Center, Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). Contract language is to be given its plain and ordinary meaning; if that language is subject to more than one reasonable interpretation, ambiguity exists. Id. Contract terms are to be read in the context of the contract as a whole, and to be interpreted so as to give meaning to all contract provisions. Id. Interpretations that "lead to a harsh and absurd result" are to be avoided. Id. "Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning and will not be considered ambiguous solely because the parties dispute the proper interpretation of the terms." Knudsen v. Transport Leasing/Contract, Inc., 672 N.W.2d 221, 223 (Minn. Ct. App. 2003).

**B.    An Option To Renew or An Option to Extend?**

The pivotal question here is whether the Lease provides AMC with an "option to extend," which continues the original lease, or an "option to renew," which requires negotiation of a new lease. See Med-Care Assocs., Inc. v. Noot, 329 N.W.2d 549, 551 (Minn. 1983). The

words "extend" and "renew" do not control; rather, the inquiry is whether the terms and conditions for the option period are ascertainable from the document itself. See id. The Minnesota Supreme Court has stated:

> It is a fundamental rule of law that an alleged contract which is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable. Consequently, where substantial and necessary terms are specifically left open for future negotiation, the purported contract is fatally defective. On the other hand, the law does not favor the destruction of contracts for indefiniteness, and if the terms can be reasonably ascertained in a manner prescribed in the writing, the contract will be enforced.

King v. Dalton Motors, Inc., 109 N.W.2d 51, 52-53 (Minn. 1961). "If any contractual term for the additional period must be negotiated or determined, the statute of frauds requires a new lease, and the new period is a renewal." Med-Care Assocs., 329 N.W.2d at 551. But "[i]f the lease is continued by the party holding the option merely on timely notice or on some other condition, no new lease is required, and the option is an extension." Id.

The question then becomes whether the terms and conditions of the option period can be "reasonably ascertained in a manner prescribed in the writing," see King, 109 N.W.2d at 53, so that nothing is subject to negotiation. Courts have found extensions where a lease expressly sets out a rent schedule for an optional second term, see Med-Care Assocs., 329 N.W.2d at 551, or permits the tenant a choice of two lease forms, each of which contains a formula to calculate rent. See Unity Investors Ltd. Partnership v. Lindberg, 421 N.W.2d 751, 754 (Minn. Ct. App. 1988). On the other hand, explicit statements that terms are to be negotiated in the future create options to renew. See King, 109 N.W.2d at 52 ("the terms and conditions to be agreed upon at the time of the option renewal"); Pofabe Development Corp. v. Ra SM, Inc., No. A07-0164, 2007 WL 4394887, *1, *3 (Minn. Ct. App., Dec. 18. 2007) (unpublished) ("[a]nnual Minimum

Rent during the renewal term shall be at fair market value as mutually negotiated by Landlord and Tenant").

The option clause in the parties' Lease falls somewhere in between these two extremes. When the Lease is viewed in its entirety, it appears that events occurring after termination are addressed in Article III of the Lease, entitled "Term." Section 3.1 sets forth the start and end of the original five-year term. At the end of the term, Section 3.2 requires the tenant to surrender the premises in good repair. Should the tenant remain in the premises thereafter, Section 3.3 provides the terms and conditions for a holdover tenancy. Section 3.3(C) expressly contemplates the possibility that the parties might "elect to negotiate a renewal of this Lease or a new lease," and requires that "Tenant shall continue to pay the Rent payable in the last Lease Year or Partial Lease Year of the Term, provided that any annual or other periodic escalation of Rent set forth in this Lease shall continue during the holdover period as if said holdover period was part of the original Term." The next sentence points out that neither party has "any obligation to commence to negotiate, or to continue negotiation of, a renewal of this Lease or a new lease covering the Leased Premises . . . ." Lease, § 3.3(C).

Which brings us to Section 3.4, the provision whose meaning must be construed. This section, entitled "Option to Extend," provides in relevant part:

> Tenant shall have two (2) successive options to extend the term of this Lease for an additional period of five (5) Lease Years . . . on the same terms and conditions as set forth herein, **except** that (i) Option Periods, once exercised cannot be exercised again, (ii) no Rent concessions, abatements, lease buyouts, tenant allowances or limitations on tax or expense pass-throughs granted with respect to the Lease Term hereof shall be applicable to any Option Period, (iii) Minimum Rent for each Option Period shall be as shown above.

Lease, § 3.4 (emphasis added).  Although Camelot and AMC insist this provision is clear and unambiguous, their interpretations differ dramatically.

Given the express language of Section 3.4 and the context of the Lease as a whole, including the explicit discussion of renewal in Section 3.3(C), it appears the parties may have intended Section 3.4 to create an extension, but on modified terms.  The question is whether they succeeded – that is, whether the modified terms can be reasonably ascertained from the text of the Lease itself.  If all terms can be ascertained as a matter of law, Section 3.4 creates an option to extend, and AMC is entitled to summary judgment.  But if any material term cannot be ascertained, Section 3.4 creates an option to renew, and Camelot is entitled to summary judgment.

Section 3.4 provides an "option[] to extend . . . on the same terms and conditions as set forth herein, except" that "(ii) no Rent concessions, abatements, lease buyouts, tenant allowances or limitations on tax or expense pass-throughs granted with respect to the Lease Term hereof shall be applicable to any Option Period."

The plain and ordinary meaning of "except" is "to exclude" or "omit."[3]  If the option terms are to be the same as the original terms "except" for certain modifications, the plain meaning of "except" dictates those modifications must change the original terms.  So, to the extent the original Lease granted "Rent concessions, abatements, lease buyouts, tenant allowances or limitations on tax or expense pass-throughs," the option eliminates them.

---

[3] Used as a verb, "except" means "to exclude, omit."  Bryan A. Garner, A Dictionary of Modern Legal Usage 335 (2d Ed. 1995).  See also Black's Law Dictionary 501 (5th Ed. 1979) ("except" means "but for; only for; not including; other than; otherwise than; to leave out of account or consideration.").

The parties disagree about which provisions of the Lease are affected by Section 3.4 (ii). AMC suggests the option applies only to Section 9.9, entitled "Tenant Allowance." As far as the remaining items listed in Section 3.4 (ii) - "Rent concessions, abatements, lease buyouts" and "limitations on tax or expense pass-throughs" - AMC argues "the Lease contains no such provisions" and therefore there is nothing to exclude from the option period. AMC Showplace Theatres, Inc.'s Memorandum in Opposition to Camelot LLC's Motion for Summary Judgment ("AMC's Mem.") [Docket No. 13] at 12.

Camelot offers an alternative interpretation: that the Lease does in fact grant "limitations on tax or expense pass-throughs," but those grants take the form of provisions in the Lease that are "Intentionally Omitted."[4] In Camelot's view, the parties agreed to omit these terms for the first five years of the Lease, and Section 3.4 reflects the parties' intent to restore them for the option periods.

Camelot has the stronger argument. Section 3.4 (ii) sets forth a list of terms and conditions "granted with respect to the Lease Term hereof" which expressly do not apply to the option period. Camelot's reading gives those terms meaning. AMC simply reads them out of existence, rendering most of Section 3.4 (ii) surplusage.

"The cardinal purpose of construing a contract is to give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. North Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997). Section 3.4 (ii)

---

[4] Again, Section 3.4 does not specify exactly what those provisions are. Camelot suggests they include Sections 5.8 (Payment of Tax Rent), 6.3 ("Landlord's Operating Costs" Defined), 6.4 (Tenant's Proportionate Share of Landlord's Operating Costs), 13.2 (Tenant's Contribution to Promotion and Marketing Fund). Camelot's Reply in Further Support of Plaintiff's Motion for Summary Judgment [Docket No. 20] at 9.

unambiguously excludes "Rent concessions, abatements, lease buyouts, tenant allowances or limitations on tax or expense pass-throughs" from the option period. But once these terms are excluded, nothing takes their place. Other than "Rent," none of the terms in the list are defined. Nor does Section 3.4 (ii) refer to any other part of the Lease by title or section number. This omission makes it problematic to ascertain exactly which provisions of the Lease have changed, much less what the new terms are.

Without a formula or other guidance in the language chosen by the parties, the scope and nature of "Rent concessions, abatements, lease buyouts, tenant allowances or limitations on tax or expense pass-throughs" applicable to the option cannot be ascertained from the Lease itself. These terms are indefinite and must be negotiated. As a result, whatever the parties may have subjectively intended, Section 3.4 (ii) creates a renewal, not an extension.

Because any indefinite term is enough to transform an option to extend into an option to renew, there is no need to construe any other provision of the Lease. Section 3.4 (iii), even if it unambiguously set forth the rent for the option period, as AMC claims, still cannot cure the indefiniteness of Section 3.4 (ii).

Section 3.4 creates an option to renew. Accordingly, Camelot is entitled to summary judgment. AMC's request for summary judgment pursuant to Rule 56(f) is denied.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Camelot's Motion for Summary Judgment [Docket No. 8] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 7, 2011.